1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARKELETA WILSON, et al.,

                Plaintiff(s),

v.

SEATTLE HOUSING AUTHORITY, et al.,

                Defendant(s).

NO. C09-226MJP

ORDER ON FEDERAL
DEFENDANTS' MOTION TO
DISMISS

The above-entitled Court, having received and reviewed

1.     Federal Defendants' Motion to Dismiss (Dkt. No. 42)

2.     Plaintiffs' Response to Federal Defendants' Motion to Dismiss (Dkt. No. 51)

3.     Seattle Housing Authority Defendants' Response to Federal Defendants' Motion to
Dismiss (Dkt. No. 52)

4.     Federal Defendants' Reply to Opposition to Federal Defendants' Motion to Dismiss
(Dkt. No. 55)

and all attached declarations and exhibits, makes the following ruling:

     IT IS ORDERED that the Federal Defendants' Motion to Dismiss pursuant to FRCP 12(b)(1)
is DENIED.

     IT IS FURTHER ORDERED that the Federal Defendants' Motion to Dismiss pursuant to
FRCP 12(b)(6) is PARTIALLY GRANTED and PARTIALLY DENIED: Plaintiffs' claims under the
Rehabilitation Act, the Housing Act and the Americans with Disabilities Act are DISMISSED, while
the remainder of Plaintiffs' claims against the Department of Housing and Urban Development will
be permitted to proceed.

**ORD ON FED DEF'S
MTN TO DISMISS  - 1**

**Background**

The Section 8 housing voucher program was created in 1974 as an amendment to the U.S. Housing Act of 1934. 42 U.S.C. § 1437 *et seq.* Tenants make partial rental payments for approved housing based on their ability to pay; public housing authorities (PHAs), funded in part by Defendant Department of Housing and Urban Development (HUD), pay the remainder.

HUD regulations provide a framework for how PHAs (such as Defendant Seattle Housing Authority (SHA)) are to conduct the "informal hearings" regarding the termination of Section 8 benefits.   24 C.F.R. § 982.555.  Those baseline requirements are modeled after the due process elements established by Goldberg v. Kelly, 397 U.S. 254 (1970).[1]

Furthermore, the determination to terminate assistance must be "in accordance with the law, HUD regulations and PHA policies" (24 C.F.R. § 982.555(a)(5)) and, if the decision concerns a person with disabilities, must give "consideration to reasonable accommodation." 24 C.F.R. § 982.555(c)(2)(iv).

Each PHA is required to adopt a written administrative plan that "establishes local policies for administration of the program in accordance with HUD requirements."  24 C.F.R. § 982.54.(a).

Plaintiffs' complaint proposes a class action lawsuit for all persons terminated from Section 8 housing in the last 6 years (as well as all persons who will be terminated from the program in the future) as well as a lawsuit for a subclass of Section 8 tenants with a disability (and their families) who have been terminated in the last 6 years (and – again – all similarly-situated individuals who will be terminated in the future).  The third amended complaint (TAC; Dkt. No. 49, Ex. 1) alleges claims against SHA concerning its termination hearings, both as the hearing procedures are written and as the rules are applied.  Since this motion only concerns the complaint against HUD, this order will not

---

[1]  Just how faithfully and fully they are modeled is an issue of much contention between the parties, and lies at the heart of this litigation.

1   address those claims except as they are relevant to HUD's motion.  The claims against the federal
2   agency itself are:

3        1.     Violation of the Administrative Procedures Act (5 U.S.C. § 702) for "promulgating
4             unconstitutional regulations that authorize or require SHA" to engage in illegal
5             informal hearings and "approving SHA's unconstitutional. . . informal hearing
6             policies."  Dkt. No. 49, TAC ¶ 13.1.

7        2.     Violation of the Housing Act (42 U.S.C. § 1437f) for "promulgating unconstitutional
8             regulations that authorize or require SHA" to engage in illegal informal hearings and
9             "approving SHA's unconstitutional. . . informal hearing policies."  Dkt. No. 49, TAC
10            ¶ 13.2.

11       3.     Violation of the U.S. Constitution by failing to provide Fifth Amendment due process
12            protections to Plaintiffs.  Dkt. No. 49, TAC ¶ 13.3.

13       4.     Violations of Fair Housing Act (42 U.S.C. § 3604(f)(1) - (2)), Rehabilitation Act (29
14            U.S.C. § 794) and Americans with Disabilities Act (42 U.S.C. § 1213) by virtue of
15            "approving SHA's written, explicit policies that facially discriminate between
16            disabled Voucher holders and non-disabled Voucher holders." Dkt. No. 49, TAC ¶
17            14.1.

18       5.     HUD's actions in promulgating and approving had "discriminatory effects or disparate
19            impacts" on Plaintiff Wilson and the disabled subclass in violation of Fair Housing
20            Act (42 U.S.C. § 3604(f)(1) - (2)), Rehabilitation Act (29 U.S.C. § 794) and
21            Americans with Disabilities Act (42 U.S.C. § 1213).  Dkt. No. 49, TAC ¶ 14.2.

22  **Discussion/Analysis**

23       HUD challenges the lawsuit pursuant to FRCP 12(b)(1) – no subject matter jurisdiction – and
24  12(b)(6) – failure to state a claim upon which relief may be granted.

25

26  **ORD ON FED DEF'S**
    **MTN TO DISMISS  - 3**

1    ### *12(b)(1) – No subject matter jurisdiction*

2            HUD argues that Plaintiffs have no standing to bring their claims; that there is, under the

3    traditional standing test, no "causal connection" to the complained-of injury that is "fairly. . .

4    trace[able] to the challenged action of the defendant."  Lujan v. Defenders of Wildlife, 504 U.S. 55,

5    560 (1982).

6            HUD attacks Plaintiffs' discrimination and due process claims on the grounds that, contrary

7    to the allegations of the complaint, HUD never approved SHA's administrative plan.  This argument

8    is supported by declarations from several officials of the local office of HUD, who state that the

9    Seattle division of HUD never approved an administrative plan of SHA.  Decl. of Stewart, ¶ 2; Decl.

10   of Pour, ¶ 4; Decl. of Rawson, ¶ 3.   Therefore, the Federal Defendants contend, any injury to

11   Plaintiffs is not "fairly traceable" to HUD and Plaintiffs have no standing to sue them.

12           Unlike a 12(b)(6) motion where the parties are (with some exceptions) limited to the

13   allegations of the complaint, a district court considering a 12(b)(1) motion to dismiss for lack of

14   subject matter jurisdiction may review matters outside of the pleadings in order to make the

15   determination.  McCarthy v. U.S., 850 F.2d 558, 560 (9th Cir. 1988).  On that basis, HUD is entitled

16   to submit extrinsic evidence to establish their entitlement to dismissal.

17           As SHA points out in their response, however, the basis of HUD's request goes to the merits

18   of the case, and to a factual issue which is not undisputed.  SHA Response, p. 2.  SHA has previously

19   stated, in its Motion to Join HUD as an Indispensable Party, "[t]he Housing Authority adopted

20   HUD's informal hearing requirements, practically verbatim, in its Section 8 Administrative Plan,

21   *which was approved by HUD*."  Dkt. No. 11, p. 2 (emphasis supplied).  Factual disputes of this kind

22   are better adjudicated via summary judgment motion, not at this preliminary stage of the proceeding.

23           The remainder of HUD's arguments (that none of Plaintiffs' injuries are traceable to anything

24   that the federal agency has or has not done) are conclusory and premature.  HUD attacks Plaintiffs'

25

26   **ORD ON FED DEF'S**
     **MTN TO DISMISS  - 4**

complaint for failing to specify *which* regulations are discriminatory or unconstitutional and *exactly* how they were injured, but federal notice pleading does not require that they do so.   Plaintiffs allege that HUD has promulgated regulations and approved a local informal hearing plan that is handicap-discriminatory and fails to provide due process – those are injuries which, as alleged, are connected to this defendant and which could be redressed by a favorable decision ordering the agency to conform its regulations and actions to constitutional and statutory requirements.  Nothing more is required at this stage of the proceedings to survive a subject matter jurisdiction challenge.

HUD's other line of argument – that they are not responsible if SHA has violated HUD's regulations or behaved in an unconstitutional or discriminatory manner which is not mandated by adherence to HUD regulations – is correct, but is hardly the end of the discussion.  If, as Plaintiffs allege (and SHA suggests in its own response), HUD's regulations are responsible for some or all of the constitutional defects in the SHA informal hearing process, then HUD is properly before this Court irrespective of whether or not the agency approved of SHA's procedures.  Plaintiffs have standing to offer the proof of their claims against the Federal Defendants in this court.

### *12(b)(6) - Failure to state a claim*

While HUD offers separate attacks on each of the statutory and constitutional bases for Plaintiffs' claims, the agency raises one argument repeatedly throughout its briefing: namely, that Plaintiffs cannot state a cause of action against them because SHA alone is responsible for their injuries.  The Court rejects this argument categorically at this preliminary stage of the litigation.  As detailed above in the analysis of HUD's 12(b)(1) argument, the Court finds Plaintiffs have done an adequate job of pleading that HUD regulations and approval of SHA administrative procedures have injured them.

The Court turns now to HUD's individualized attacks on  Plaintiffs' claims against them.

1    Fair Housing Act (42 U.S.C. § 3604(f)(1)-(2)

2          HUD argues that the Fair Housing Act (FHA) requires discrimination in the "sale or rental" of

3    dwellings and, since the agency is not involved in "sale or rental," it cannot be found liable for

4    violations of this statute.

5          Plaintiffs argue that they can maintain their claim under the FHA provision that prohibits

6    "otherwise making unavailable or denying a dwelling to any buyer or renter because of a handicap"

7    (42 U.S.C. § 3604(f)(1)), which forbids "discriminatory conduct that directly impacts a plaintiff's

8    ability to locate in an area or obtain housing."  Gourlay v. Forest Lake Estates Civic Assoc., 276

9    F.Supp. 2d 1222, 1230 (M.D. Fla. 2003).

10         The Court finds that the allegations against HUD in Plaintiffs' complaint, if proven, would

11   fall within the category of "making unavailable. . . a dwelling to any. . . renter because of a

12   handicap."  The Court finds furthers support for the sufficiency of Plaintiffs' claims in the language

13   of § 3604(f)(2), which states:

14         [It shall be unlawful] [t]o discriminate against any person in the terms, conditions, or
           privileges of sale or rental of a dwelling, or in the provision of services or facilities in
15         connection with such dwelling, because of a handicap of ---
           * * *
16              (B) a person *residing in* or intending to reside in that dwelling. . .

17   (emphasis supplied)

18         The above language makes it clear that the statute is not only intended to protect persons in

19   situations arising prior to sale or rental, but also covers persons who are already residing in a rented

20   dwelling.  HUD argues that the language of their regulations (which forbids the local agencies from

21   doing anything in violation of the FHA) exempts them from liability if such a violation occurs, but if

22   there are restrictions in HUD's regulations (for instance, forbidding informal hearing officers from

23   considering any issues or legal arguments – e.g., a possibly discriminatory impact on disabled

24

25

26   **ORD ON FED DEF'S
     MTN TO DISMISS  - 6**

persons – other than whether a Section 8 regulation was violated) that are creating conflicts with FHA requirements, it is entirely plausible that Plaintiffs may have a claim against them.

HUD's 12(b)(1) motion in this regard will be **DENIED.**

Due process/Fifth Amendment

HUD asserts that its regulations comply with <u>Goldberg</u> and therefore Plaintiffs cannot state a claim for any due process violation. The agency suggests that this Court has previously held that the HUD regulations pass constitutional muster on <u>Goldberg</u> grounds, but the truth is that the previous rulings on this issue have not gone that far.

> [The] Supreme Court [in <u>Goldberg</u>] enumerated what those pre-termination procedural requirements were, and the HUD regulations are a direct reflection of that portion of the <u>Goldberg</u> holding; i.e., they incorporate all the elements mandated by the Court for a *pre-termination* process.

<u>Hendrix v. SHA</u>, 2007 WL 3357715 at *5 (W.D. Wash. Nov. 9, 2007)(emphasis supplied).

But the question that was raised in <u>Hendrix</u> – and that may be examined at more depth in this litigation – is whether <u>Goldberg</u> requires more than HUD regulations currently allow for. The issues of whether <u>full</u> due process (in the form of a pre- <u>and</u> post-termination hearing) may also require (1) a written record of the proceedings, (2) the right to demand proof which conforms to the rules of evidence, (3) hearing officers versed in all areas of federal law and evidence, (4) the right to explore all legal defenses at the informal hearing, and/or (5) the right to notification of post-hearing review are all raised by Plaintiffs' lawsuit here. HUD argues that some of those elements – the right to a transcript and a "qualified" hearing officer – are either not really necessary or not proscribed by HUD regulations. Such contentions raise arguments on the merits that will await another day for resolution. At this juncture it is sufficient that Plaintiffs have advanced an argument that could plausibly entitle them to relief from HUD on due process grounds.

HUD's 12(b)(1) motion in this regard will be **DENIED.**

1   <u>Administrative Procedures Act</u> (5 U.S.C. § 702)

2          HUD asserts that, as Plaintiffs have a final remedy available against SHA,  they are not

3   entitled under the APA to request relief from HUD.  It is not a sound argument at this preliminary

4   stage of the proceedings: a  portion of Plaintiffs' allegations and SHA's defense is that the

5   restrictions which create the unconstitutional constraints on the informal hearing procedures originate

6   with the HUD guidelines and regulations.  On that basis, a remedy which involved SHA alone would

7   neither be final nor adequate.

8          HUD's 12(b)(1) motion in this regard will be **DENIED.**

9

10  <u>Rehabilitation Act</u> (29 U.S.C. 794)

11         HUD first argues that there is no claim that it has denied an "otherwise qualified person

12  federal benefits on the basis of disability" in violation of this statute, but as has been previously

13  stated, Plaintiffs have adequately plead that HUD actions and regulations are responsible for at least a

14  portion of SHA's alleged discrimination on the basis of handicap.

15         HUD argues more convincingly, however, that there is no implied right of private action

16  under this statute (i.e., that Plaintiffs can only sue for Rehabilitation Act relief under the

17  Administrative Procedures Act (APA)).  The analysis of this argument starts from the principle that

18  "private rights of action to enforce federal law must be created by Congress."  <u>Alexander v.</u>

19  <u>Sandoval</u>, 532 U.S. 275, 286 (2001).

20         HUD argues that the Ninth Circuit's reasoning in <u>San Carlos Apache Tribe v. U.S.</u>, 417 F.3d

21  1091 (9th Cir. 2005) – which found no private right of action for violations of the National Historical

22  Preservation Act (NHPA)  – is applicable to this case.  Plaintiffs cite other cases as counter-

23  examples, but ultimately they are not sufficient to override HUD's Ninth Circuit authority.  The

24  holding in <u>San Carlos</u> is based on the Supreme Court authority in <u>Sandoval</u>, not only for the

25

26  **ORD ON FED DEF'S**
    **MTN TO DISMISS  - 8**

proposition that private rights of action must be explicitly Congressionally created, but also for the

rationale that "the express provision of one method of enforcing a substantive rule suggests that

Congress intended to preclude others."  532 U.S. at 290.  The San Carlos court found that alternate

means in the APA (while conceding that it is not "expressly referenced"), which it described as "a

longstanding means to challenge agency action" and "a specific mechanism for enforcing statutes

like NHPA."[2]  417 F.3d at 1095.  This Court agrees with the sentiment expressed by the First Circuit

(and quoted in the San Carlos opinion):

> It is difficult to understand why a court would ever hold that Congress, in enacting a statute
> that creates federal obligations, has implicitly created a private right of action against the
> federal government, for there is hardly ever any need for Congress to do so.  That is because
> federal action is nearly always reviewable for conformity with statutory obligations without
> any such 'private right of action.'

N.A.A.C.P. v. Sec'y of HUD, 817 F.2d 149, 152 (1st Cir. 1987)(emphasis in original).

Plaintiffs' authority is either from other circuits (Amer. Council for the Blind v. Paulson, 525

F.3d 1256 (D.C. Cir. 2008) is a D.C. Circuit case where a private organization was permitted –

without comment – to sue under the Rehabilitation Act), from other district courts (Amer. Council for

the Blind v. Astrue, 2008 WL 1858928 at *7 (N.D. Cal. Apr. 23, 2008) is an unpublished case from

the Northern District of California) or pre-dates the San Carlos case (Mendez v. Gearan, 947 F.Supp.

1364 (N.D. Cal. 1996)).  They are not even persuasive authority in the face of the Ninth Circuit's

holding in San Carlos.

Defendants' 12(b)(6) motion to dismiss claims based on this statute is **GRANTED.**

---

[2] Plaintiffs also advance the argument that the two statutes – the Rehabilitation Act and NHPA – are so different
that the reasoning which supports the San Carlos opinion regarding the NHPA cannot be applied to the Rehabilitation Act.
Beyond this conclusory assertion, Plaintiffs offer no analysis of what the difference between the statutes is or why any
such  difference would compel a different result.

**ORD ON FED DEF'S
MTN TO DISMISS  - 9**

1   Housing Act (42 U.S.C. 1404 *et seq.*)

2          This is another "implied right of private action" claim and the Court again finds that Plaintiffs

3   have not established their right to relief under this statute.

4          The cases Plaintiffs cite for their "implied right" are not compelling.  Wright v. Roanoke

5   Redev. And Housing Auth'y, 479 U.S. 418 (1987), concerns a § 1983 action against a state

6   government agency; Orrego v. HUD, 701 F.Supp. 1384 (N.D. Ill. 1988), a district court case from

7   another circuit, pre-dates Sandoval and concerned the Emergency Preservation Act (not the Housing

8   Act); and Hurt v. Phila. Housing Auth'y, 806 F.Supp. 515 (E.D. Pa. 1992) is another district court

9   case from another circuit and involved enforcement of the Housing Act against a PHA, not against

10  HUD.  Considered in light of Sandoval's holding that private rights of action must be explicitly

11  created by Congress, Plaintiffs' authority fails to persuade.

12         Furthermore, Plaintiffs' complaint does not specify in what fashion the alleged violations

13  were in contravention of the Housing Act, and the Act itself makes it very clear that the Secretary of

14  HUD can only be sued under the Housing Act for violations of duties enumerated in the Act.  42

15  U.S.C. § 1404a.

16         Plaintiffs' Housing Act claims will be denied on 12(b)(6) grounds.  **GRANTED.**

17

18  Americans with Disabilities Act (42 U.S.C. § 1213)

19         HUD contends that Plaintiffs are not entitled to relief on this claims because the ADA

20  inapplicable against *federal* government agencies.  The statute prohibits discrimination on the basis

21  of a disability by any "public entity;" "public entity" is defined to include only state and local

22  governmental agencies.  42 U.S.C. § 12131.  Therefore, "Title II of the ADA is not applicable to the

23  federal government."  Cellular Phone Taskforce v. F.C.C., 217 F.3d 72, 73 (2nd Cir. 2000).

24

25

26  **ORD ON FED DEF'S**
    **MTN TO DISMISS  - 10**

1    Plaintiffs concede this argument (Pltfs Response, p. 6, n. 5) and HUD's motion to dismiss this

2    claim is **GRANTED.**

3

4    **Conclusion**

5    The Court finds that subject matter jurisdiction over the federal agency exists and denies

6    HUD's motion pursuant to FRCP 12(b)(1).

7    Plaintiffs have not succeeded in stating claims for which relief may be afforded under the

8    Rehabilitation Act, the Housing Act and the Americans with Disabilities Act.  All claims related to

9    those statutes will be dismissed pursuant to FRCP 12(b)(6); the remainder of Plaintiffs' claims

10   against HUD will be permitted to go forward.

11   The clerk is ordered to provide copies of this order to all counsel.

12   Dated: April _22__, 2010

13

14                                                      _____
                                                        Marsha J. Pechman
15                                                      U.S. District Judge

16

17

18

19

20

21

22

23

24

25

26   **ORD ON FED DEF'S
     MTN TO DISMISS  - 11**