UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARKELETTA WILSON, et al.,

    Plaintiff(s),

v.

SEATTLE HOUSING AUTHORITY, et al.,

    Defendant(s).

NO. C09-226MJP

ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The above-entitled Court, having received and reviewed

1. Plaintiffs' Motion for Preliminary Injunction on Behalf of Markeletta Wilson (Dkt. No. 56)

2. Federal Defendants' Response to Plaintiffs' Motion for Preliminary Injunction on Behalf of Markeletta Wilson (Dkt. No. 66)

3. Seattle Housing Authority Defendant's Response to Plaintiff Wilson's Motion for Preliminary Injunction (Dkt. No. 67)

4. Plaintiffs' Reply on Motion for Preliminary Injunction (Dkt. No. 71)

5. Federal Defendants' Memorandum Regarding HUD's Interpretation of 24 C.F.R. § 100.202(c) and 24 C.F.R. § 982.555(b) (Dkt. No. 77)

6. Seattle Housing Authority Defendants' Response to HUD Defendants' Memorandum on Regulatory Interpretation (Dkt. No. 79)

and all attached declarations and exhibits, and having heard oral argument on the motion, makes the following ruling:

IT IS ORDERED that the motion is DENIED.

**ORDER ON MTN FOR
PRELIM INJUNCTION - 1**

**Background**

Plaintiff Markeletta Wilson was terminated from government-assisted Section 8 housing in February of 2007 based on allegations of repeated failures to conform to the practices required to maintain eligibility for the program. Two years later she filed this lawsuit, seeking certification of a class to challenge Defendant Seattle Housing Authority's (SHA) informal hearing procedure as it applies to all recipients of Section 8 vouchers, and to challenge the policies, regulations and practices of the local SHA program and their parent agency, the Department of Housing and Urban Development (HUD) as applied to persons with disabilities.

According to evidence filed in support of this motion, Plaintiff has recently received an eviction notice from her current housing for failure to pay rent. Her care providers are concerned about her situation. She is on limited income ($664/mo. from SSI) and is facing "imminent loss of her housing, and continued physical and mental deterioration." Pltf Mtn, p. 5; Wyome Decl. at ¶¶ 2, 4. She seeks injunctive relief from this court in the form of an order requiring SHA to reinstate her Section 8 housing voucher during the pendency of this litigation.

**Discussion**

In order to qualify for injunctive relief, Plaintiff must satisfy four elements. She must show that (1) she is likely to succeed on the merits of her claims, (2) she is likely to suffer irreparable harm in the absence of the relief, (3) the balance of equities tips in her favor and (4) the public interest favors the granting of an injunction. California Pharmacists Ass'n v. Maxwell-Jolly, 596 F.3d 1098, 1104 (9th Cir. 2010). These are the minimal requirements for any injunctive relief; as discussed below, the nature of the relief sought by Plaintiff demands an even higher standard of evidence.

<u>Likelihood of success on the merits</u>

The merits of Plaintiff's case are hotly contested among all the parties to this action. The Court is unable to reach a finding that Plaintiff is likely to prevail, especially in light of the

**ORDER ON MTN FOR
PRELIM INJUNCTION - 2**

heightened standard necessitated by the mandatory injunctive relief which she seeks. Plaintiff's failure in this motion to attain the requisite standard of proof should not be read as a conclusion by the Court that she is <u>unlikely</u> to prevail, only that it remains an open question at this point.

Although SHA challenges her proof that she is "disabled" as defined by the Fair Housing Act ("a physical or mental impairment which substantially limits one or more of [a] person's major life activities, either temporarily or permanently;" 42 U.S.C. § 3602), the Court does not find her proof deficient on this issue. In addition to the supporting evidence accompanying this motion – Plaintiff's personal declaration concerning the nature of her disabilities (Wilson Decl., Dkt. No. 57) and the declaration of her social worker (Wyome Decl., Dkt. No. 58) – there is evidence that Plaintiff is receiving SSI disability benefits. For purposes of this motion, the Court finds that Plaintiff is likely to prevail on her claim that she is disabled within the meaning of the statutes under which she seeks relief.

However, a significant portion of her theory of recovery rests on her assertion that she was not allowed to raise legal issues outside the restricted inquiry into whether she had violated her Section 8 agreement.

The points of dispute surrounding this theory are numerous. SHA takes the position (1) Plaintiff never requested a reasonable accommodation during her Section 8 tenancy and (2) Plaintiff did not attempt to raise "failure to reasonably accommodate" at her informal termination hearing. Plaintiff disagrees. She contends that documents filed with SHA prior to their termination decision constituted notice and <u>requests</u> for accommodation. Additionally, Plaintiff argues that the housing authority "knew or should have known" that she was disabled within the meaning of the statute.

The parties dispute who must take the first step in the process of determining the need for and nature of a reasonable accommodation. SHA maintains that it is prohibited from inquiring into the "nature or severity" of a tenant's disability (24 C.F.R. § 100.202(c)) and must await a reasonable

**ORDER ON MTN FOR
PRELIM INJUNCTION - 3**

accommodation request.  Plaintiff says the burden is on the agency to initiate a reasonable accommodation process where it has reason to know that a disability exists, while SHA counters that HUD regulations (24 C.F.R. § 982.555) prohibit it from making "discretionary administrative determinations" at a fairness hearing.

HUD challenges SHA's interpretation of two regulations, contending that (1) 24 C.F.R. § 100.202(c) does not preclude the local agency from inquiring further into the nature and severity of a tenant's disabilities and (2) "the requirement to provide a reasonable accommodation is not a '[d]iscretionary administrative determination' within the meaning of [24 C.F.R. § 982.555]."  HUD Memo, Dkt. No. 77.  SHA responds by arguing that (1) the agency's ability to inquire further into a tenant's disability is dependent on a request for a reasonable accommodation (which SHA maintains was never made in Plaintiff's case, and Plaintiff asserts was evident from her communications) and (2) it is not the requirement of providing an accommodation that is at issue, but whether the accommodation decision-making process (which SHA argues is undeniably a "discretionary administrative determination;" SHA Response to HUD, Dkt. No. 79, p. 7) is excluded from the informal hearing process by the regulatory prohibition of 24 C.F.R. § 982.555.  All sides make very salient arguments, the issues are clearly in dispute, and the Court is moved no closer to a determination that Plaintiff is likely to succeed on the merits of her matter.

The issue of who is likely to prevail on the merits is further complicated by the existence of provisions within SHA's administrative plan which create a right to appeal a termination decision based on a requested accommodation:

> If termination is based upon behavior resulting from a disability and SHA receives a request for an accommodation, SHA will delay any decision on the denial or termination pending a decision on the request for reasonable accommodation.

SHA Section 8 Administrative Plan, Chapter 17, Termination of Assistance, pp. 10-11.

**ORDER ON MTN FOR PRELIM INJUNCTION - 4**

1    Thus the housing authority argues that Plaintiff had the right, at the time that SHA announced
2    its intent to terminate her Section 8 benefits, to request an accommodation and a determination of
3    whether an accommodation would obviate the need for termination of benefits. That request would
4    be reviewed by the SHA staff and, if denied, would be further subject to review by the agency's ADA
5    (Americans with Disabilities Act) Committee.  Only upon denial by the ADA Committee would the
6    informal hearing proceed on the termination issues raised by the initial notice of intent.  SHA
7    Response, pp. 19-20.  Plaintiff does not deny the existence of this procedure at the time she was
8    notified that her Section 8 benefits were in jeopardy, and makes no response in her briefing to SHA's
9    claim that she had the right to a hearing on the reasonable accommodation issue at any time during
10   her termination proceedings.[1]

11   Even under the minimal standard of "likely to prevail on the merits" required for traditional
12   injunctive relief, the Court would be hard-pressed to find in Plaintiff's favor on this motion.
13   However, Plaintiff is not seeking traditional injunctive relief – maintenance of the *status quo* – by
14   this request for a preliminary injunction.  Had Plaintiff filed this request prior to the conclusion of her
15   informal hearing in 2007 (or even immediately following the decision to terminate), she might argue
16   that restoring her Section 8 benefits represented a return to the *status quo* between the parties.  But it
17   is three years since her benefits have been terminated and she has – up to this point – managed to find
18   housing without those benefits.  That is the *status quo* which Plaintiff seeks to alter by this request.
19   Courts are generally more cautious about issuing a "mandatory" preliminary injunction that would
20   alter the *status quo* by requiring some positive action to create a change in circumstances.  Relief of
21   this nature is "subject to heightened scrutiny and should not be issued unless the facts and the law
22   clearly favor the moving party."  Dahl v. HEM Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir.

---

[1] Plaintiff did contend at oral argument that she was never offered access to this process during her informal termination hearing, that SHA bore responsibility for recognizing her communications as requests for reasonable accommodation, and that the procedure does not meet the requirements of the FHA or of due process.

**ORDER ON MTN FOR**
**PRELIM INJUNCTION - 5**

1993). Mandatory injunctive relief is "particularly disfavored" and will not be granted unless "extreme or very serious damage will result and [is] not issued in doubtful cases or where the injury complained of is capable of compensation in damages." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) (quoting Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1980)).

Under this heightened standard of scrutiny, Plaintiff has not established the requisite likelihood of success on the merits.

Likelihood of irreparable harm

Plaintiff's arguments on this element suffer from several defects. The first is the three-year time gap between her loss of Section 8 housing and her request to be reinstated on an injunctive basis. It simply strains credibility for her to assert that, although she has been able to exist (albeit at an admittedly subsistence level) for three years without the Section 8 benefits she was denied in 2007, she is now irreparably injured by the absence of those benefits. The claim in her briefing that "[w]ithout her Section 8 voucher, Ms. Wilson is at serious risk of homelessness" begs the questions of why this relief was not sought a year ago when she first filed her lawsuit. While the Court does not question the marginal nature of Plaintiff's circumstances, they have not changed except in the particular of having to currently find housing which she presumably has been able to find for the last three years.

Second, the 9th Cir. case cited by Plaintiff to support her position is inapplicable to her situation. Roe v. Anderson (966 F.Supp. 977 (E.D.Cal. 1997); *aff'd* 135 F.3d 1400 (9th Cir. 1998)) concerns a finding of "irreparable injury" where plaintiffs could not find affordable housing due to reduction in their public benefits. Id. at 985. But Plaintiff's public benefits were reduced three years ago and until recently she has had housing – what has occasioned her emergent circumstances now is that she has lost her housing because of a failure to pay rent. Whatever connection there is between

**ORDER ON MTN FOR
PRELIM INJUNCTION - 6**

her loss of public benefits in 2007 and her inability to pay rent in 2010 is too attenuated to justify categorizing SHA's conduct and regulations as the proximate cause of the "irreparable harm" she claims and to further justify the extraordinary relief she seeks.

Finally, Plaintiff's claim that case law supports a finding that possible deprivation of a constitutional right alone is a sufficient demonstration of irreparable harm is over-reaching. While it is true that there are "cases involving alleged infringements of free speech, association, privacy or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief. . . [t]he alleged denial of procedural due process, without more, does not automatically trigger such a finding." Public Service Co. of N.H. v. Town of West Newbury, 835 F.2d 380, 382 (1st Cir. 1987).

The Court is unable to find that Plaintiff has demonstrated the likelihood of irreparable harm of a nature required for injunctive relief.

Balance of hardships

While the Court does not doubt that Plaintiff is suffering considerable hardships in her life, the fact remains that Plaintiff has been living without Section 8 subsidies for over three years and has presented no evidence that the deprivation of those subsidies (wrongfully or not) is responsible for Plaintiff's current hardships such that her Section 8 benefits should be restored. The Court does not accept Plaintiff's position that "the proposed injunction presents little or no fiscal or administrative hardship upon SHA." Mtn., p. 12. SHA is an agency of finite resources, and a grant of a Section 8 voucher to Plaintiff means that another qualified applicant will continue to languish on the program's waiting list.

The Court does not find that the balance of hardships tips in Plaintiff's favor.

**ORDER ON MTN FOR PRELIM INJUNCTION - 7**

Favoring the Public Interest

"Ensuring that government agencies comply with the law" (Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Svc., 235 F.Supp.2d 1143, 1162 (W.D. Wash. 2002)) is an important public interest, and one which will be served by fully developing the facts and theories of this case through discovery and motions.  A preliminary ruling over this individual voucher does not further measured analysis of the entire informal hearing procedure which is the crux of this litigation and would not serve the public interest.

**Conclusion**

Plaintiff has failed to satisfy her burden of proof on any of the elements required for the granting of injunctive relief, especially under the heightened standard demanded by the mandatory injunctive nature of her request.  Her request for an order restoring her Section 8 benefits for the pendency of this litigation is DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated: May _ 13_, 2010

Marsha J. Pechman
U.S. District Judge

**ORDER ON MTN FOR PRELIM INJUNCTION  - 8**