1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                    AT SEATTLE

10   MARKELETTA WILSON,                    CASE NO. 2:09-CV-00226-MJP

11                  Plaintiff,             ORDER ON FEDERAL
                                           DEFENDANT'S MOTION FOR
12        v.                               SUMMARY JUDGMENT

13   SEATTLE HOUSING AUTHORITY,

14                  Defendant.

15

16        The Court, having received and reviewed

17        1. Federal Defendant's Motion for Summary Judgment (Dkt. No. 87)

18        2. Plaintiffs' Response to Federal Defendant's Motion for Summary Judgment (Dkt. No.

19           100)

20        3. Seattle Housing Authority Defendant's Response to Federal Defendant's Motion for

21           Summary Judgment (Dkt. No. 93)

22        4. Federal Defendant's Reply to Opposition to Federal Defendant's Motion for

23           Summary Judgment (Dkt. No. 103)

24

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED the motion of Plaintiffs – made at oral argument – to dismiss the Fair Housing Act claims against the Department of Housing and Urban Development is GRANTED.

IT IS FURTHER ORDERED that the summary judgment is GRANTED and all remaining claims against the Department of Housing and Urban Development are DISMISSED with prejudice.

**Background**

The Section 8 housing program was created in 1974 as an amendment to the Housing Act of 1937.  Defendant Seattle Housing Authority (SHA) is one of thousands of public housing agencies (PHAs) created to operate the program in local jurisdictions.  SHA is required to "adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements."  24 C.F.R. § 982.54(a).

The HUD requirements are found at 24 C.F.R. § 982.555.  In summary, the HUD requirements are:

- No termination of assistance prior to an informal hearing
- PHA must issue a written notice of a decision to terminate benefits which includes:
  - Statement of reasons for termination
  - Notice of the family's right to a hearing if they disagree
  - Deadline for requesting a hearing
- If requested, the hearing must be provided "expeditiously"
- PHA administrative plans must contain the "procedures for conducting informal hearings"
- The family has a right to discovery of all materials on which PHA is relying for its decision (undisclosed materials may not be introduced at the hearing)
- The family has a right (at its own expense) to representation at the hearing
- The hearing officer
  - May be any person who is not (1) the decisionmaker or (2) the decisionmaker's subordinate
  - Must conduct the hearing "in accordance with the PHA procedures"

- Evidence at the hearing
  - The family has a right to present evidence and to examine any adverse witnesses
  - The rules of evidence do not apply
- The hearing officer must issue a written decision of all findings
  - "Stating briefly the reasons for the decision"
  - All fact determinations must be made on a "preponderance of the evidence" standard
  - A copy of the decision must be promptly provided to the family

According to HUD, these regulations establish the "minimum procedures for PHA review of [Section 8] determinations." 49 Fed.Reg. 12215, 12224 (March 28, 1984). The PHAs are responsible for creating a plan which establishes the informal hearing procedures for Section 8 participants. 24 C.F.R. § 982.54(d)(13). Since 1995, HUD has not assumed responsibility for approving these administrative plans for the PHAs (which now number around 3,000). *See* Public and Indian Housing Notices 95-63 at 2, 3, *available at* http://www.hud.gov/offices/adm/ hudclips/notices/pih/94pihnotices.cfm. In addition to complying with the requirements of the HUD regulations at 24 C.F.R. § 982.555, each PHA must also "administer the program in conformity with the Fair Housing Act, Title VI of the Civil Rights Act of 1964, section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act." 24 C.F.R. § 982.53(b)(1).

This complaint was originally filed in February of 2009 and was aimed only at SHA. In May of 2009, SHA moved to add HUD as an indispensable party, a motion which was granted in August. Dkt. No. 26. Plaintiffs amended their complaint to include HUD, which moved to dismiss the complaint in November of 2009. Dkt. No. 42. That motion was stayed for a period of time to permit limited discovery by the non-movants. The Court issued an order partly granting and partly denying the motion (Dkt. No. 72), and Plaintiffs' due process (Administrative Procedures Act) and Fair Housing Act (FHA) claims against HUD were permitted to proceed.

1    The decision to permit the claims to go forward was partly based on representations by

2    SHA that HUD had reviewed and approved their administrative plan (including their informal

3    hearing procedures), a claim which was later established as unfounded.  Upon learning that SHA

4    had no proof that HUD had approved the administrative plan or plans at issue in this case,

5    Plaintiffs filed an amended complaint withdrawing those allegations.  Dkt. No. 111.

6    **Discussion**

7    The Court finds that Plaintiffs lack standing to bring these claims against the Federal

8    Defendant.  Even were this not the case, the Court further finds that HUD is entitled to summary

9    judgment dismissing the claims against it on substantive grounds.

10   Standing

11   Plaintiffs are bound by the requirements of Lujan v. Defenders of Wildlife, 504 U.S. 555

12   (1992) regarding the minimum constitutional requirements for standing to bring their action

13   against the federal defendants, requiring them to establish:

14   1. Injury in fact
     2. A "casual connection" between the injury and the Defendant's conduct such that
15      the injury is "fairly traceable" to the Defendant and not attributable to the actions
        of an independent third party
16   3. A likelihood that the injury will be redressed by a favorable decision

17   Id. at 561.

18   The issues which remained after HUD's motion to dismiss were: (1) whether HUD had

19   approved of SHA's allegedly improper policies and practices regarding Section 8 terminations

20   and/or (2) whether those allegedly improper policies and practices were in any sense mandated

21   or authorized by HUD's regulations.  Added to those issues now is the further consideration –

22   raised by Plaintiffs – that HUD's regulations are defective in that they fail to mandate a

23   comprehensive set of procedures which insure complete due process for the recipients of federal

24   housing assistance.

ORDER ON FEDERAL DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 4

1    It is undisputed that HUD did not approve of the SHA hearing procedures which are at

2    issue here.[1]  Plaintiffs have dropped those allegations in the face of SHA's inability to produce

3    any proof that HUD reviewed and approved any portion of the local agency's administrative

4    plan.

5    This leaves only the issue of whether the HUD regulations are constitutionally defective

6    by virtue of requiring SHA to adopt impermissible practices (or, as Plaintiffs argue, for failing to

7    specifically mandate every procedural protection required by the holding of Goldberg v. Kelly,

8    397 U.S. 254, 266-71 (1970)).  SHA has acknowledged that it "does not contend that any

9    particular HUD official specifically and uniquely mandated or required SHA's termination

10   procedures."  Def Ex. 7, Response to Interrog. No. 4, p. 4.  Likewise, Plaintiffs "reject the

11   premise… that HUD's regulations 'require' SHA to violate its independent constitutional

12   obligations and act in an unconstitutional, illegal manner."  Def. Ex. 9, Response to Interrog.

13   Nos. 1 and 3, p. 4 and 5.

14   In fact, the essence of Plaintiffs' complaint against HUD is that the agency has "violated

15   Plaintiffs' constitutional rights by issuing regulations that do not require SHA to provide

16   constitutionally appropriate informal hearing procedures and protections."  Id.  This is an

17   extremely difficult burden of proof.  As the Lujan court said, where the complained-of injury

18   "arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone*

19   *else*, much more is needed."  504 U.S. at 562 (emphasis in original).

20           In that circumstance, causation and redressability ordinarily hinge on the response
             of the regulated (or regulable) third party to the government action or inaction…
21           The existence of one or more of the essential elements of standing depends on the
             unfettered choices made by independent actors… Thus, when plaintiff is not

22   _____

23       [1] There is a dispute about exactly which version of the SHA administrative plan is at issue in this litigation,
     but it is irrelevant for purposes of this motion, since HUD has not reviewed local agency administrative plans since
24   1995.  Public and Indian Housing Notices 95-63 at 2, 3.

1                       himself the object of the government action or inaction he challenges, standing is

2                       not precluded, but it is ordinarily substantially more difficult to establish.

Id. (internal quotation omitted).

3       While Plaintiffs concede that HUD's regulations are intended to establish a "minimum"

4 set of procedural requirements for PHAs across the nation,[2] they continually describe those same

5 regulations as "comprehensive and mandatory" and on that basis attack them for not requiring

6 every constitutional safeguard outlined in Goldberg v. Kelly.  The cases Plaintiffs cite in support

7 of their argument that federal agency regulations must mandate adequate due process protections

8 are distinguishable from these facts: they involve either direct action by the federal agency

9 (Mathews v. Eldridge, 424 U.S. 319 (1976)) or a third party acting as the federal defendant's

10 agent (Schweiker v. McClure, 456 U.S. 188 (1982).   There is no allegation here that SHA is an

11 agent of HUD – it is an independent third party established by state law that contracts with the

12 federal government and receives part of its funding from sources other than HUD.  See Dkt. No.

13 53, Declaration of Lofton, ¶ 3.

14       The Court is also aware of the Ninth Circuit's recent ruling in Renee v. Duncan, 623 F.3d

15 787 (9th Cir. 2010), cited by Plaintiffs in support of their legal theory that they have standing to

16 bring these claims.  In order to demonstrate the inapplicability of Renee to this matter, it is

17 necessary to develop the factual background of that opinion.  The Renee case revolved around

18 the No Child Left Behind Act (NCLB), 20 U.S.C. § 6301 et seq., a statute enacted "to ensure that

19 all children have a fair, equal, and significant opportunity to obtain a high-quality education…"

20 20 U.S.C. § 6301.  One of the means of securing this goal was a requirement that, by the end of

21

22 _____

23     [2]  See Housing Assistance Payments Program; Existing Housing, 49 Fed.Reg. 12215,
12224 (March 29, 1984): HUD regulations "state minimum procedures for PHA review of

24 determinations concerning" Section 8 participants.

the 2005-06 academic year, only "highly qualified" teachers would be permitted to teach core

academic classes in school districts receiving Title I funding.  Id. § 6319(a)(2).  NCLB defined

"highly qualified teacher" as (among other things) a teacher who "has obtained full State

certification as a teacher (including certification obtained through alternative routes to

certification) or passed the State teacher licensing examination…" 20 U.S.C. § 7801(23)(A)(i).

The enabling regulations issued by the U.S. Department of Education, however,

contained less stringent requirements:

> (1) … [A "highly qualified"] teacher… must –
> (i)  Have obtained full State certification as a teacher, which may include certification obtained through alternative routes to certification;
> . . .
> (2)  A teacher meets the requirement in paragraph (a)(1) of this section if the teacher –
> . . .
> (ii)  Is participating in an alternative route to certification program under which –
> (A) The teacher –
> . . .
> (4)  *Demonstrates satisfactory progress toward full certification as prescribed by the State*[.]

34 C.F.R. § 200.56 (emphasis supplied).

Each state is responsible for ensuring compliance by its local school districts.  20 U.S.C.

§§ 1232c, 7844(a).  The State of California adopted a statutory scheme for compliance with

NCLB that recognized several levels of teachers.  Among them was an "intern credential" holder

– a teacher who was participating in, but had not yet completed, an alternative route teacher-

training program.  The plaintiffs in Renee challenged the enabling federal regulations of the

Department of Education, claiming that – as reflected in the California legislation -- they were

allowing teachers without "full State certification" to be designated as "highly qualified" in

contravention of NCLB.  623 F.3d at 794.

The Ninth Circuit concluded that "the Secretary's regulation impermissibly expands the definition of 'highly qualified teacher' contained in 20 U.S.C. 20 § 7801(23) by including in that definition an alternative-route teacher who merely 'demonstrates satisfactory progress toward' the requisite 'full State certification.'" Id. at 796.  And, in language cited as controlling by Plaintiffs in this case, the court found that

> [t]o the degree that the federal regulation, and the piggybacking California regulations, have had the effect of permitting California and its school districts to ignore the fact that a disproportionate number of interns teach in schools in minority and low-income areas, there is a causal connection between the challenged regulation and the injury of which Appellants complain.

Id. at 797.  On that basis, Plaintiff/Appellants in Renee were found to have standing to sue.

Plaintiffs here point to the phrase "had the effect of *permitting*" and argue that the case before this Court – where HUD's failure to specify comprehensive procedures covering every aspect of the Goldberg due process protections has had the effect of "permitting" SHA to adopt allegedly unconstitutional practices – is analogous and therefore controlled by Renee.

The factual circumstances and the legal principles in these two cases are not analogous. This is, rather, a classic case of the same word meaning two different things in two different contexts.  California and its school districts were "permitted" to adopt an improper qualification criterion only in the sense that they were given a choice between two mandatory options and they chose one.  The federal enabling regulations in Renee were not silent on the specifics of who could be classified as a "highly qualified teacher" – the states and local school districts had two options, one of which the Ninth Circuit found to be outside the original Congressional intent as expressed in NCLB.

By contrast, HUD has drafted a skeletal and minimum procedural framework in which the PHAs are to create a system for administering housing assistance, and then left it entirely up

1   to the local agencies how they will fill in the details of that system.[3]  This is "permission" of an

2   entirely different nature than that at issue in the <u>Renee</u> decision – where the local agencies were

3   "permitted" to choose between two mandatory options – and the Court does not find either the

4   reasoning or the result in that opinion controlling in this case.

5       The Ninth Circuit's holding in <u>Pritikin v. Dept. of Energy</u>, 254 F.3d 791 (9th Cir. 2001)

6   is more on point.  In <u>Pritikin</u>, a plaintiff failed to convince the Court of Appeals that she had

7   standing to request that DOE be ordered to fund medical monitoring at the Hanford nuclear plant

8   site.  The monitoring was the statutory responsibility of the Agency for Toxic Substances and

9   Disease Registry (ATSDR) which had contracted with DOE to implement a monitoring program.

10  The Ninth Circuit's reasoning seems particularly apropos under these facts:

11              [Plaintiff] faces similar causation problems.  She cannot show that DOE's failure
                to request funding prevented ATSDR from implementing the medical monitoring
12              program.

13  <u>Id.</u> at 799.  This is highly relevant to the complaint before the Court.  Plaintiffs cannot show that

14  HUD's alleged failure to create a truly "comprehensive" informal hearing procedure prevented

15  SHA from implementing one.

16      Plaintiffs go through a laundry list of procedural safeguards contained (or implied) in

17  <u>Goldberg</u> which are absent from the HUD regulations – the opportunity to present legal and

18  equitable defenses, training/knowledge requirements for hearing officers, notice of right to

19  judicial review, a requirement to maintain an administrative record – and claim that it is illegal

20  for HUD not to mandate these things.

21  _____

22  [3]  There are admittedly some broad constraints on that permission contained within the statutory admonition that
    each PHA must also "administer the program in conformity with the Fair Housing Act, Title VI of the Civil Rights
23  Act of 1964, section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act" (24
    C.F.R. § 982.53(b)(1)) and further that "PHAs must adopt written informal pretermination hearing procedures for
    participants which fully meet the requirements of <u>Goldberg v. Kelly</u>."  55 Fed.Reg 133 at 28, 541 (July 11, 1990).

24

ORDER ON FEDERAL DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 9

1    But Plaintiffs have failed to produce any authority that a federal agency violates the

2    Constitution by not requiring an independent third party to adhere to constitutional guidelines,

3    and there is no denying that the HUD regulations do not *prohibit* any of the procedural

4    safeguards which Plaintiffs seek.

5    In some instances, the federal regulations are simply silent on whether SHA's practices

6    are permissible.  Plaintiffs complain that the SHA hearing officers consider evidence that is "not

7    reliable or probative;" nothing in the HUD regulations suggest that this is permissible.

8    Similarly, the regulations set minimum requirements for hearing officers (i.e., not the person

9    who made the decision or a subordinate of the decisionmaker) but do not prohibit the PHAs from

10   imposing stricter training/skill requirements.

11   In other instances, SHA's practices actually appear to be in contravention of the federal

12   guidelines.  For example, rather than prohibiting Section 8 participants from presenting all

13   relevant legal and equitable defenses (another complaint of Plaintiffs), the HUD regulations

14   require the PHAs to "give a participant family an opportunity for an informal hearing to consider

15   whether the [PHA decision to terminate is] in accordance with *the law*, HUD regulations and

16   PHA policies."  24 C.F.R. § 982.555(a)(1) (emphasis supplied).   Regarding the necessity of an

17   administrative record, the HUD regulations require the hearing officer to issue a written decision.

18   24 C.F.R. § 982.555(e)(4)(i) and (e)(6).  If the SHA hearing officers are failing to issue such a

19   decision, it is not with the approval of the federal agency.

20   The record supports HUD's position that, under their regulations, it is the local agency's

21   responsibility to define the parameters of their hearing policies and practices in accordance with

22   constitutional and statutory requirements:  "PHAs must adopt written informal pretermination

23

24

ORDER ON FEDERAL DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 10

1  hearing procedures for participants which fully meet the requirements of <u>Goldberg v. Kelly</u>." 55

2  Fed.Reg 133 at 28, 541 (July 11, 1990

3        The Court finds that Plaintiffs' injuries are not fairly traceable to HUD, therefore

4  Plaintiffs have no standing to sue the federal agency.  A substantive analysis of Plaintiffs' due

5  process claims against HUD follows, but of course their lack of standing is sufficient to dismiss

6  the HUD claims.

7

8  <u>Due Process/ APA Claims</u>

9        Plaintiffs do not dispute HUD's contention that these two issues are inextricably

10  intertwined – Plaintiffs are prosecuting their due process claims by way of the Administrative

11  Procedures Act.  4th Am. Complaint, ¶ 13.1.

12        Plaintiffs are only entitled to review under the APA for an "[a]gency action made

13  reviewable by statute and final agency action *for which there is no other adequate remedy in a*

14  *court.*"  5 U.S.C. § 704 (emphasis supplied).  It appears to the Court that Plaintiffs have an

15  adequate remedy against the authors of the complained-of conduct, Defendant SHA, whose

16  informal hearing practices and procedures were its own creation and not (as Plaintiffs concede)

17  mandated by HUD.  Support for this analysis can be found in the matter of <u>Hendrix v. SHA</u>

18  (C07-657TSZ), another case in this district where the Plaintiffs complained of unconstitutional

19  hearing procedures and were able to arrive at a consent decree with SHA without HUD being

20  joined in the litigation.  Plaintiffs have an adequate remedy against SHA.

21        Furthermore, there can be no federal liability for the actions of a regulated state agency

22  without proof of "federal action."  This requires Plaintiffs to demonstrate "that the [federal]

23  government exercised such coercive power or such significant encouragement that it is

24

1   responsible for the specific… conduct challenged…"  <u>Kitchens v. Bowen</u>, 825 F.2d 1337, 1340

2   (9th Cir. 1987) (quoting <u>Fidelity Fin. Corp. v. Fec. Home Loan Bank</u>, 792 F.2d 1432, 1435 (9th

3   Cir. 1986))(citing <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004-05 (1982)).

4         A federal agency which simply does nothing in the wake of a state agency's failure to

5   comply with due process standards is not considered to have taken "federal action" – mere

6   "approval or acquiescence is insufficient to hold the federal agency responsible."   <u>Id.</u>  Nor does

7   the fact that the state agency was subject to federal regulation suffice to create "federal action" –

8   there must be "a sufficiently close nexus between the [federal government] and the challenged

9   action of the regulated agency so that the actions of the latter may be fairly treated as those of the

10  [federal government] itself."  <u>Id.</u>

11        Plaintiffs attempt unsuccessfully to distinguish <u>Kitchens</u> on the ground that the defendant

12  agency in that case had left "the responsibility for formulating specific procedure… to the

13  individual states," (<u>Id.</u>), while arguing that HUD promulgated "comprehensive, specific

14  procedural regulations that PHAs across the nation must follow."  Response, p. 9.  A review of

15  the HUD regulations makes it clear that they are just what HUD says they are – minimum

16  procedural requirements which would, of necessity, have to be fleshed out by the individual local

17  agencies implementing the program.  Calling them "comprehensive" does not make them so.

18  <u>Kitchens</u> is controlling precedent for this case.

19        Furthermore, the commentary accompanying the HUD regulations makes it clear that the

20  local PHAs <u>do</u> have "the responsibility for formulating specific procedure[s]."  ("PHAs must

21  adopt written informal pretermination hearing procedures for participants, which fully meet the

22  requirements of <u>Goldberg v. Kelly</u>."  55 Fed.Reg 133 at 28, 541 (July 11, 1990)).

23

24

1    In the absence of any federal action and in the face of an adequate remedy against the

2   state agency, HUD is entitled to have the due process/APA claims against them dismissed.

3

4   <u>SHA's Response</u>

5    The crux of SHA's response to HUD's summary judgment is: "HUD said that its

6   'minimum requirements' met the due process standard of <u>Goldberg</u>.  We followed HUD's

7   guidelines in establishing our informal hearing procedures.  Because we relied on HUD's

8   guidelines in creating our procedures, there is a causal connection between HUD's actions and

9   Plaintiffs' injuries."

10    Plaintiffs have made it clear that there is nothing in the HUD regulations which requires

11   constitutionally impermissible procedures, therefore SHA's "we did everything the regulations

12   told us to do" defense is simply inadequate to defeat summary judgment.  HUD has repeatedly

13   stressed that the regulations which they promulgated were intended (and publicized) as

14   "minimum" requirements (*see* 49 Fed. Reg. 12215, 12224 (March 28 1984)); i.e., the <u>very least</u>

15   that a PHA must do in order to satisfy constitutional mandates.  Combined with the further

16   regulatory admonition that "PHAs must adopt written informal pretermination hearing

17   procedures for participants which fully meet the requirements of <u>Goldberg v. Kelly</u>" (55 Fed.Reg

18   133 at 28, 541 (July 11, 1990)), this means that SHA cannot avoid summary judgment here by

19   merely alleging that they adopted the HUD standards.  The practices of which Plaintiffs

20   complain are nowhere contained in the federal guidelines.

21    Plaintiffs' complaint is aimed at those SHA procedures which are not <u>prohibited</u> by

22   HUD's regulations – having abandoned their original allegation that HUD approved those

23   procedures, SHA appears to have no further legal grounds for keeping HUD in this litigation.

24

1

2          Plaintiffs' Motion to Strike

3          Plaintiffs move to strike Exh. 9 to HUD's motion, which is a copy of Plaintiffs' answers

4    to HUD's interrogatories.   But a thorough reading of their pleading reveals that what they are

5    really objecting to is HUD's characterization of a particular version of SHA's policies and

6    procedures (which was attached as Exh. C to SHA's original Motion to Join HUD as a

7    defendant) as the operative set of procedures during the Class Period.  HUD does make reference

8    to "Exh. C" in its interrogatories, but it is unclear to the Court how this renders Plaintiffs'

9    answers to those interrogatories "irrelevant, objectionable and lack[ing] evidentiary foundation."

10         What is irrelevant is any mention of any particular version of SHA's policies and

11   procedures in connection with the defenses HUD has interposed.  Since there is no issue of

12   whether HUD approved them and the crux of Plaintiffs' claims against HUD are that HUD's

13   regulations failed to constrain SHA to adopt comprehensively constitutional procedures, it does

14   not matter (for purposes of this motion) which version of SHA's policies and procedures are

15   under consideration.  The motion to strike is denied.

16         **Conclusion**

17         Because their alleged injuries are not fairly traceable back to HUD, Plaintiffs have no

18   standing to bring their claims against the Federal Defendant.  Furthermore, there is no proof of

19   "federal action" and Plaintiffs have an adequate remedy against SHA, so they may not maintain a

20   lawsuit against the Federal Defendant under the APA.

21         Plaintiffs' motion to dismiss their FHA claims against HUD is GRANTED.  HUD's

22   motion for summary judgment is GRANTED, and Plaintiffs' causes of action against the federal

23   agency are DISMISSED with prejudice.

24

ORDER ON FEDERAL DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 14

1

2

3    The clerk is ordered to provide copies of this order to all counsel.

4    Dated March 29, 2011.

5

6

7    _____
     Marsha J. Pechman
8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24